IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL ROBERTS,

      Plaintiff,                  No. 2:11-cv-0474 MCE DAD P

   vs.

M. D. McDONALD, et al.,           <u>ORDER AND</u>

      Defendants.            <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion to dismiss brought on behalf of defendants California Department of Corrections and Rehabilitation, Swingle, McDonald, Bevan, Clark, and Miranda. Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

      Plaintiff is proceeding on an amended complaint against defendants California Department of Corrections and Rehabilitation ("CDCR"), Swingle, McDonald, Bevan, Clark,

/////

/////

/////

1

and Miranda.[1] Therein, plaintiff alleges that he is disabled, mobility impaired, and suffers from heart and lung disease as well as a number of other medical conditions. Plaintiff alleges that defendants Clark, Reynolds, and Moore have refused to provide him with his required medication on at least fifty different occasions. According to plaintiff, High Desert State Prison ("HDSP") has a practice whereby medical staff can deny an inmate his medication if the inmate does not strictly adhere to certain rules, including standing directly in front of the cell window, having a bright light on in the cell, and having inmate identification clearly visible in the cell window. However, plaintiff alleges that for an entire year he was substantially confined to a wheelchair and could only stand for short periods of time. Plaintiff alleges that even when he followed all of the HDSP rules referred to above despite his difficulty in doing so defendants Clark, Reynolds, and Moore would still pass his door without giving him his medication. (Am. Compl. at 5-6.)

In addition, plaintiff alleges that defendant Swingle maintains a policy at HDSP whereby medical staff re-package medication in un-marked envelopes and then distribute the medication to the inmates hours later without any assurance that each inmate is receiving the proper medication. As a result of this policy, plaintiff alleges that defendants Clark, Reynolds, and Moore have given him his medication late and have given him the wrong medication, which caused him to be hospitalized on one occasion. Plaintiff also alleges that when he has gone to the law library or medical appointments and asked to receive his medication at a different time, defendants have refused. Plaintiff complained, but defendant Swingle told him that "[t]he medication nurses will not search for [him] to give [him] medications." (Am. Compl. at 6-7.)

Finally, plaintiff alleges that on July 14, 2009, he filed a reasonable modification or accommodation request to have his wheelchair repaired. According to plaintiff the wheelchair

---

[1] On July 12, 2012, the court found that plaintiff's amended complaint also appeared to state a cognizable claim against defendant S. Moore. However, service has not yet been effected on defendant Moore.

would shake and was unstable while in motion. Plaintiff did not obtain relief through the inmate administrative appeals process, so he filed a petition for writ of habeas corpus in the Lassen County Superior Court. Defendants Miranda, McDonald, and Bevan reported that plaintiff's wheelchair was in proper working order and not in need of repair. Only when a Lassen County Superior Court judge ordered an evidentiary hearing and asked to see plaintiff's wheelchair did defendants Miranda, McDonald, and Bevan concede that the wheelchair was unsafe to operate and that a replacement was necessary. Plaintiff claims that defendants violated his rights under the Eighth Amendment and the American's with Disabilities Act ("ADA"). In terms of relief, plaintiff requests compensatory damages and injunctive relief. (Am. Compl. at 5 & 8.)

## ANALYSIS

In the pending motion to dismiss, defense counsel argues that plaintiff failed to exhaust his administrative remedies with respect to his claims against defendants McDonald, Miranda, and Bevan. In addition, defense counsel argues that plaintiff's complaint fails to state a claim upon which relief may be granted. Specifically, defense counsel contends that: (1) plaintiff's complaint fails to state a claim against the defendants in their official capacities; (2) plaintiff's requests for injunctive relief are moot; and (3) defendant Swingle cannot be held liable because vicarious liability does not apply in § 1983 lawsuits. Defense counsel also argues that all defendants are entitled to qualified immunity. Finally, defense counsel argues that plaintiff's ADA claims are barred by his membership in the Armstrong class action lawsuit. The court will address each of these arguments in turn.

I. Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

First, the court will address defense counsel's argument that plaintiff failed to exhaust his administrative remedies. By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The United States Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See id. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  Most such inmate appeals progress through three levels of review. See id. § 3084.7. The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3).  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

/////

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense. See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. That burden, however, is "very low." Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The defendants need only show the existence of an inmate grievance procedure that plaintiff did not use. Id. (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996) and Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)).

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively made unavailable to him. Albino, 697 F.3d at 1031. For example, where prison officials improperly screen out inmate grievances, they render administrative remedies effectively unavailable to the prisoner. See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). In such a case, "the inmate cannot pursue the necessary sequence of appeals . . . ." Id. See also Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was precluded from exhausting administrative remedies by a warden's mistaken instruction to him that a particular unavailable document was needed for him to pursue his inmate appeal).

If the district court concludes that the prisoner has not exhausted administrative remedies and is not excused from doing so, "the proper remedy is dismissal of the claim without prejudice." Wyatt, 315 F.3d at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

In this case, the court finds that plaintiff exhausted his claims against defendants McDonald, Miranda, and Bevan in connection with their alleged failure to provide him with an adequately-working wheelchair. Defense counsel acknowledges that plaintiff filed two inmate appeals related to his broken wheelchair. In Appeal Log No. HDSP-B-09-00765, plaintiff asked

to have his wheelchair back after staff had taken it from him for repair. In Appeal Log No. HDSP-09-01424, plaintiff complained that his wheelchair was still broken even after staff had taken it for repair. In the pending motion to dismiss defense counsel contends that these appeals were inadequate to exhaust plaintiff's claims against the defendants because neither inmate appeal alleged that the named defendants engaged in inappropriate activity. (Defs.' Mot. to Dismiss at 5-6 & Cornelison Decl. Exs. A & B.)

However, to satisfy the exhaustion requirement, a prisoner is not required to name the individuals in his inmate appeal that he later decides to name in his lawsuit. Jones, 549 U.S. at 219 ("exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."). Nor is a prisoner required to allege every fact necessary to state or prove a legal claim in his administrative appeal. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Rather, the primary purpose of an administrative appeal is merely "to notify the prison of a problem." Id. at 1120. Here, plaintiff's inmate appeals gave prison officials a fair opportunity to respond to his claims regarding his wheelchair. Id. at 1121 (a prisoner must "provide enough information . . . to allow prison officials to take appropriate responsive measures."). Plaintiff pursued both of his inmate appeals through the highest level of review. (Defs.' Mot. to Dismiss, Cornelison Decl. Exs. A & B.) As such, the court finds plaintiff has satisfied the exhaustion requirement with respect to his claims against defendants McDonald, Miranda, and Bevan.

As noted above, the defendants bear the burden of raising and proving the affirmative defense of failure to exhaust administrative remedies. See Jones, 549 U.S. 216; Wyatt, 315 F.3d at 1117-19. Defendants McDonald, Miranda, and Bevan have not carried that burden in this instance. Accordingly, the pending motion to dismiss based on plaintiff's alleged failure to exhaust his administrative remedies prior to filing suit should be denied.

/////

/////

II. <u>Motion to Dismiss Pursuant to Rule 12(b)</u>

The court now turns to defense counsel's contention that plaintiff's complaint fails to state a cognizable claim. A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. <u>North Star Int'l v. Arizona Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Hosp. Bldg. Co. v. Trustees of Rex Hosp.</u>, 425 U.S. 738, 740 (1976); <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982); see also <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992).

### A. Official Capacity Claims

Defense counsel argues that any defendants sued in their official capacities under § 1983 are immune from suit under the Eleventh Amendment, and any such claims should be dismissed. (Defs.' Mot. to Dismiss at 7-8.) The court agrees. The state has not waived immunity under the Eleventh Amendment for claims brought against it under § 1983 in federal court. See Dittman v. California, 191 F.3d 1020, 1025-56 (9th Cir. 1999) ("[T]he Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity."). Accordingly, plaintiff's claims against the named defendants in their official capacity (as opposed to their individual capacity) brought pursuant to § 1983 should be dismissed.

### B. Plaintiff's Claims for Injunctive Relief

Defense counsel argues that plaintiff's requests for injunctive relief are now moot because he is no longer housed at HDSP. (Defs.' Mot. to Dismiss at 8.) Once again, the court agrees. On October 12, 2012, plaintiff filed a notice of change of address in this action informing the court that he is now incarcerated at California Institution for Men ("CIM"). Thus, plaintiff is no longer subject to the alleged conditions he complained of at HDSP. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). Moreover, contrary to plaintiff's argument in opposition to the pending motion to dismiss, his claims do not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. "A mere speculative possibility of repetition is not is not sufficient. There must be a cognizable danger, a reasonable expectation, of recurrence for the repetition branch of the mootness exception to be satisfied." Williams v. Alioto, 549 F.2d 136, 143 (9th Cir. 1977). Accordingly, plaintiff's requests for injunctive relief should be dismissed as moot.

### C. Plaintiff's Claims against Defendant Dr. Swingle

Defense counsel argues that defendant Dr. Swingle cannot be held liable in her individual capacity because vicarious liability does not apply in § 1983 lawsuits. (Defs.' Mot. to Dismiss at 9.) Counsel is correct that supervisory personnel are generally not liable under § 1983

for the actions of their employees under a theory of respondeat superior.  See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991); Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  However, in his complaint plaintiff has not merely alleged that defendant Dr. Swingle is liable as a supervisor of defendants Clark, Reynolds, and Moore.  Rather, plaintiff alleges in his complaint that defendant Dr. Swingle maintained a policy at HDSP whereby medical staff re-packaged medication in un-marked envelopes and then distributed the medication to inmates hours later without any assurance that each inmate was receiving the proper medication.  (Am. Compl. at 7-8.)  Plaintiff alleges that, as a result of this policy, he has not received his medications because defendants were unable to re-package them on time, and he has also been hospitalized because he has received the wrong medication.  (Id.)  In this regard, plaintiff has alleged a sufficient casual connection between defendant Dr. Swingle and his claimed constitutional violations and, if plaintiff proves these allegations to be true, he has a reasonable opportunity to prevail on the merits of this action.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (a supervisory defendant may be held liable "'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) ("Supervisory liability exists even without overt personal participation in the offense act if supervisor officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'").

        Plaintiff also alleges that when he has gone to the law library or medical appointments and asked to receive his medication at a different time defendants have refused.  Plaintiff complained about this practice through the inmate appeals process because it forced him to choose between receiving his medication and facing disciplinary action for ignoring a ducat, but defendant Swingle denied him relief or other accommodations.  (Am. Compl. at 7.)  Again, if plaintiff proves these allegations to be true, he has a reasonable opportunity to prevail on the

merits of this action. See Starr, 652 F.3d 1208, (9th Cir. 2011) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation, or for conduct that showed reckless or callous indifference to the rights of others.") (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)); see also Uriarte v. Schwarzenegger, No. 06cv1558-MMA (WMC), 2011 WL 4945232 at *6 (S.D. Cal. Oct. 18, 2011) ("[A] plaintiff may establish liability on the part of defendants involved in the administrative grievance process under the Eighth Amendment by alleging that his appeal put the defendants on notice that he had a serious medical need that was not being met, and that their denial therefore constituted deliberate indifference."); Kunkel v. Dill, No. 1:09-cv-00686-LJO-SKO PC, 2010 WL 3718942 at *1 (E.D. Cal. Sept. 15, 2010) ("Plaintiff, here, has alleged sufficient facts that plausibly support the conclusion that Defendant Pfeiffer, despite having no medical training, was aware that the denial of Plaintiff's administrative appeal requesting medical treatment exposed Plaintiff to an excessive risk of harm."); Herrera v. Hall, No. 1:08-cv-01882-LJO-SKO PC, 2010 WL 2791586 at *4 (E.D. Cal. July 14, 2010) ("[I]f there is an ongoing constitutional violation and the appeals coordinator had the authority and opportunity to prevent the ongoing violation, a plaintiff may be able to establish liability by alleging that the appeals coordinator knew about an impending violation and failed to prevent it.").

On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. See Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). In this case, the court finds that plaintiff's factual allegations "plausibly suggest an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Accordingly, defendants' motion to dismiss plaintiff's claims against defendant Dr. Swingle as based on a vicarious liability theory should be denied.

/////

III.  Qualified Immunity

Next, the court turns to defense counsel's contention that defendants Dr. Swingle and Clark as well as defendants McDonald, Miranda, and Bevan are entitled to dismissal on qualified immunity grounds.  Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are:  (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity there without determining whether the allegations in fact make out a statutory or constitutional violation.  See Pearson, 555 U.S. 236-242.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd, ___U.S.___, ___,131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635 (1987)).  In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate."  Id.  See also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time]

1 gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier,
2 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular
3 case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden
4 of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812.
5       As to defendant Dr. Swingle, defense counsel argues she is entitled to qualified
6 immunity because her alleged policy of re-packaging medication in unmarked containers does
7 not amount to the "unnecessary wanton infliction of pain" as required by the Eighth Amendment.
8 (Defs.' Mot. to Dismiss at 11-12.) The court finds this argument unpersuasive. Here, plaintiff
9 alleges that defendant Dr. Swingle maintained a policy whereby medical staff re-packaged
10 medication in un-marked envelopes and then distributed the medication to inmates hours later
11 without any assurance that each inmate was receiving the proper medication. (Am. Compl. at 7-
12 8.) As a result of the policy, plaintiff allegedly failed to receive his medication at times and on
13 one occasion received the wrong medication resulting in his hospitalization. (Id.) Viewing
14 plaintiff's allegations in the light most favorable to the him, defendant Dr. Swingle's conduct
15 violated plaintiff's constitutional rights. It is well established that deliberate indifference may be
16 shown when prison officials deny, delay, or intentionally interfere with medical treatment, or
17 may be shown by the way in which prison officials provide medical care. See Snow v.
18 McDaniel, 681 F.3d 978, 986 (9th Cir. 2012); see also Lopez v. Smith, 203 F.3d 1122, 1132 (9th
19 Cir. 2000) (en banc) ("A prisoner need not prove that he was completely denied medical care.");
20 Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) ("[A]ccess to medical staff is
21 meaningless unless that staff is competent and can render competent care."). Accordingly,
22 defendants' motion to dismiss defendant Dr. Swingle based on the affirmative defense of
23 qualified immunity should be denied.
24       As to defendant Clark, defense counsel argues that defendant Clark is entitled to
25 qualified immunity because she failed to provide plaintiff his medication on various occasions,
26 but the specific instances described by plaintiff show she was acting reasonably and in

...
...

accordance with prison policy. (Defs.' Mot. to Dismiss at 12.) Again, the court finds this argument unpersuasive. In his amended complaint, plaintiff alleges <u>inter alia</u> that defendant Clark denied him his prescribed medication on more than fifty occasions. (Am. Compl. at 5-6.) Viewing plaintiff's allegations in the light most favorable to the him, defendant Clark's conduct violated plaintiff's constitutional rights. Specifically, deliberate indifference may be shown when prison officials ignore express orders from treating physicians. See <u>Estelle</u>, 429 U.S. at 104-05 (deliberate indifference may manifest "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 (9th Cir. 2000) (a prisoner may establish deliberate indifference by showing that a prison official intentionally interfered with his medical treatment); <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1165 & n.6 (9th Cir. 1999) ("a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon."). Accordingly, defendants' motion to dismiss defendant Clark based on the affirmative defense of qualified immunity should be denied.

As to defendants McDonald, Miranda, and Bevan, defense counsel argues that they are entitled to qualified immunity because while plaintiff alleges that his wheelchair was broken for an extended period of time and that the defendants lied about the status of wheelchair, plaintiff has failed to specify how the defendants lied or how the lies caused a delay in the repairing of his wheelchair. (Defs.' Mot. to Dismiss at 13.) Once more, the court disagrees. In his amended complaint, plaintiff alleges that he tried to get his wheelchair repaired but prison officials did not provide him relief through the administrative grievance process. (Am. Compl. at 8.) Then, when he filed a petition for writ of habeas corpus in state court, the court in that case ordered an evidentiary hearing at which time defendants conceded that plaintiff's wheelchair was unsafe to operate and that a replacement was necessary. (<u>Id.</u>) Viewing plaintiff's allegations in the light most favorable to the him, defendants McDonald, Miranda, and Bevan's alleged

conduct, if proven, violated plaintiff's constitutional rights. Repair of a wheelchair is a serious medical need. See McGuckin, 974 F.2d at 1059 (a medical need is serious if left untreated could result in "further significant injury" and the "unnecessary and wanton infliction of pain."). Moreover, according to plaintiff's allegations, defendants lied about the status of his wheelchair to avoid getting it repaired. (Am. Compl. at 8.) If true, defendants responded to plaintiff's serious medical needs with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 834 & 837 (1994); Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brown v. Castillo, No. 1:02-cv-06018-LJO-DLB PC, 2007 WL 3054165 at *15 (E.D. Cal. Oct. 19, 2007) (denying qualified immunity because "[n]o reasonable officer would believe that allowing a wheelchair-bound inmate to ride in a wheelchair in need of repair could not have resulted in a substantial risk to inmate health and safety."). Accordingly, defendants' motion to dismiss defendants McDonald, Miranda, and Bevan based on the affirmative defense of qualified immunity should be denied.

The court notes that defense counsel does not address the "clearly established" prong of the qualified immunity analysis in the pending motion. However, the court observes that by 2008, the time of the alleged constitutional violations in this case, "the general law regarding the medical treatment of prisoners was clearly established," and "it was also clearly established that [prison staff] could not intentionally deny or delay access to medical care." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002). Defendants should have known that failing to provide plaintiff with his prescribed medication and an adequately-working wheelchair violated his rights under the Eighth Amendment.

IV.  Armstrong Class Action

Finally, defense counsel argues that plaintiff's requests for injunctive relief under the ADA are encompassed by and barred as a result of the consent decree and permanent injunction entered in Armstrong v. Brown, which applies to all present and future state prisoners and parolees with mobility, sight, hearing, learning, and kidney disabilities. (Defs.' Mot. to Dismiss at 13.) Insofar as plaintiff's claims for injunctive relief are not moot, the court agrees.

14

Where a plaintiff is a member of a pending class action for equitable relief concerning prison conditions, he may not maintain a separate, individual suit for relief that is also sought by the class. See Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979); see also Diaz v. Diaz, No. 1:12-cv-01296-GBC (PC), 2012 WL 5949094 at *6 (E.D. Cal. Nov. 28, 2012) (plaintiff's ADA claims for injunctive relief should be dismissed based on plaintiff's membership in Armstrong class); Webb v. Schwarzenegger, No. C 07-2294 PJH, 2012 WL 163012 at *2 (N.D. Cal. Jan. 19, 2012) (same). Here, plaintiff seeks injunctive relief to prevent CDCR and its employees from "discriminating against the disabled." (Am. Comp. at 5.) There is no indication that the general injunctive relief sought is "not covered" by the class action in Armstrong v. Brown. Crawford, 599 F.2d at 891. Accordingly, plaintiff's requests for injunctive relief under the ADA should be dismissed.[2]

**OTHER MATTERS**

Also pending before the court is plaintiff's motion for preliminary injunctive relief. Therein, plaintiff complains about his conditions of confinement at CIM and asks the court to order Acting Warden Cash to provide him with an electricity-equipped cell. Defendants have opposed the motion, and plaintiff has filed a reply.

The court will recommend that plaintiff's motion for preliminary injunctive relief be denied. First, plaintiff's motion does not comply with Local Rule 231 which requires that a motion for preliminary injunctive relief be accompanied by: (1) a declaration signed under penalty of perjury on the question of irreparable injury; (2) a memorandum of points and authorities addressing all legal issues raised by the motion; and (3) evidence of notice to all

---

[2] However, the court notes that plaintiff's ADA claims are not wholly barred as defense counsel seems to suggest in defendants' pending motion to dismiss. Individual suits for damages are not barred by a pending class action for injunctive relief. See Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996) ("the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events."). If plaintiff can prove intentional discrimination by the defendants, he may be able to recover monetary damages under Title II of the ADA. See Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

persons who would be affected by the order sought.  In addition, in plaintiff's motion for preliminary injunctive relief, he seeks an order against Acting Warden Cash.  Plaintiff is advised that this court is unable to issue an order against any individual or entity who is not a party to a suit pending before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969); Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").  Finally, "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Stormans v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008)).  Here, plaintiff complains about various conditions of confinement at CIM and claims that the totality of the circumstances of his confinement has resulted in a denial of access to the courts.  Plaintiff is advised that, to state a cognizable claim for denial of access to the courts, he must demonstrate an "actual injury."  Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).  Plaintiff has not alleged an actual injury or shown that any of the conditions he complains of have resulted in an inability to prosecute this action or any other action.  In this regard, plaintiff's allegations fall short of making the showing required for the granting of preliminary injunctive relief.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

        Plaintiff has also filed a motion for an automatic extension of time to respond to all court matters.  In his motion, plaintiff alleges that he has experienced delays in receiving his legal mail from the court and from the Office of the Attorney General.  The court will deny plaintiff's motion as unnecessary.  If plaintiff believes he needs additional time to respond to
/////

future court orders or motions and filings by the defendants counsel he may request an extension of time from the court at that time.

## CONCLUSION

IT IS HEREBY ORDERED that plaintiff's motion for an automatic extension of time (Doc. No. 51) is denied;

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss for failure to exhaust administrative remedies (Doc. No. 35) be denied;

2. Defendants' motion to dismiss for failure to state a claim (Doc. No. 35) be granted in part and denied in part as follows:

    a. Defendants' motion to dismiss plaintiff's claims brought pursuant to § 1983 against defendants in their official capacity be granted;

    b. Defendants' motion to dismiss plaintiff's requests for injunctive relief as moot be granted; and

    c. Defendants' motion to dismiss plaintiff's claims against defendant Dr. Swingle as based on a vicarious liability theory be denied;

3. Defendants' motion to dismiss based on the affirmative defense of qualified immunity (Doc. No. 35) be denied;

4. Defendants' motion to dismiss plaintiff's requests for injunctive relief under the ADA (Doc. No. 35) be granted;

5. Plaintiff's motion for preliminary injunctive relief (Doc. No. 43) be denied; and

6. Defendants be directed to file an answer in response to plaintiff's Eighth Amendment and ADA claims within thirty days of any order adopting these findings and recommendations.

/////

1    These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
3 days after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6 shall be served and filed within seven days after service of the objections.  The parties are
7 advised that failure to file objections within the specified time may waive the right to appeal the
8 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
9 DATED: June 26, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
robe0474.57