1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAUL ROBERTS,

11              Plaintiff,                    No. 2:11-cv-0474 MCE DAD P

12        vs.

13   M. D. McDONALD, et al.,              <u>ORDER AND</u>

14              Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion to dismiss brought on

18   behalf of defendants California Department of Corrections and Rehabilitation, Swingle,

19   McDonald, Bevan, Clark, and Miranda.  Plaintiff has filed an opposition to the motion, and

20   defendants have filed a reply.

21                              **BACKGROUND**

22        Plaintiff is proceeding on an amended complaint against defendants California

23   Department of Corrections and Rehabilitation ("CDCR"), Swingle, McDonald, Bevan, Clark,

24   /////

25   /////

26   /////

1

and Miranda.[1]  Therein, plaintiff alleges that he is disabled, mobility impaired, and suffers from heart and lung disease as well as a number of other medical conditions.  Plaintiff alleges that defendants Clark, Reynolds, and Moore have refused to provide him with his required medication on at least fifty different occasions.  According to plaintiff, High Desert State Prison ("HDSP") has a practice whereby medical staff can deny an inmate his medication if the inmate does not strictly adhere to certain rules, including standing directly in front of the cell window, having a bright light on in the cell, and having inmate identification clearly visible in the cell window.  However, plaintiff alleges that for an entire year he was substantially confined to a wheelchair and could only stand for short periods of time.  Plaintiff alleges that even when he followed all of the HDSP rules referred to above despite his difficulty in doing so defendants Clark, Reynolds, and Moore would still pass his door without giving him his medication.  (Am. Compl. at 5-6.)

In addition, plaintiff alleges that defendant Swingle maintains a policy at HDSP whereby medical staff re-package medication in un-marked envelopes and then distribute the medication to the inmates hours later without any assurance that each inmate is receiving the proper medication.  As a result of this policy, plaintiff alleges that defendants Clark, Reynolds, and Moore have given him his medication late and have given him the wrong medication, which caused him to be hospitalized on one occasion.  Plaintiff also alleges that when he has gone to the law library or medical appointments and asked to receive his medication at a different time, defendants have refused.  Plaintiff complained, but defendant Swingle told him that "[t]he medication nurses will not search for [him] to give [him] medications."  (Am. Compl. at 6-7.)

Finally, plaintiff alleges that on July 14, 2009, he filed a reasonable modification or accommodation request to have his wheelchair repaired.  According to plaintiff the wheelchair

---

[1]  On July 12, 2012, the court found that plaintiff's amended complaint also appeared to state a cognizable claim against defendant S. Moore.  However, service has not yet been effected on defendant Moore.

1   would shake and was unstable while in motion.  Plaintiff did not obtain relief through the inmate

2   administrative appeals process, so he filed a petition for writ of habeas corpus in the Lassen

3   County Superior Court.  Defendants Miranda, McDonald, and Bevan reported that plaintiff's

4   wheelchair was in proper working order and not in need of repair.  Only when a Lassen County

5   Superior Court judge ordered an evidentiary hearing and asked to see plaintiff's wheelchair did

6   defendants Miranda, McDonald, and Bevan concede that the wheelchair was unsafe to operate

7   and that a replacement was necessary.  Plaintiff claims that defendants violated his rights under

8   the Eighth Amendment and the American's with Disabilities Act ("ADA").  In terms of relief,

9   plaintiff requests compensatory damages and injunctive relief.  (Am. Compl. at 5 & 8.)

**ANALYSIS**

11          In the pending motion to dismiss, defense counsel argues that plaintiff failed to

12  exhaust his administrative remedies with respect to his claims against defendants McDonald,

13  Miranda, and Bevan.  In addition, defense counsel argues that plaintiff's complaint fails to state a

14  claim upon which relief may be granted.  Specifically, defense counsel contends that:  (1)

15  plaintiff's complaint fails to state a claim against the defendants in their official capacities; (2)

16  plaintiff's requests for injunctive relief are moot; and (3) defendant Swingle cannot be held liable

17  because vicarious liability does not apply in § 1983 lawsuits.  Defense counsel also argues that

18  all defendants are entitled to qualified immunity.  Finally, defense counsel argues that plaintiff's

19  ADA claims are barred by his membership in the <u>Armstrong</u> class action lawsuit.  The court will

20  address each of these arguments in turn.

21  I.  <u>Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

22          First, the court will address defense counsel's argument that plaintiff failed to

23  exhaust his administrative remedies.  By the Prison Litigation Reform Act of 1995 ("PLRA"),

24  Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect

25  to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

26  confined in any jail, prison, or other correctional facility until such administrative remedies as are

1   available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all

2   inmate suits about prison life, whether they involve general circumstances or particular episodes,

3   and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516,

4   532 (2002).

5            The United States Supreme Court has ruled that exhaustion of prison

6   administrative procedures is mandated regardless of the relief offered through such procedures.

7   See Booth v. Churner, 532 U.S. 731, 741 (2001).  The Supreme Court has also cautioned against

8   reading futility or other exceptions into the statutory exhaustion requirement.  See id. at 741 n.6.

9   Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA

10  exhaustion requirement by filing an untimely or otherwise procedurally defective administrative

11  grievance or appeal.  See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).  "[T]o properly exhaust

12  administrative remedies prisoners 'must complete the administrative review process in

13  accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but

14  by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting

15  Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)

16  ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").

17           In California, prisoners may appeal "any policy, decision, action, condition, or

18  omission by the department or its staff that the inmate or parolee can demonstrate as having a

19  material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, §

20  3084.1(a).  Most such inmate appeals progress through three levels of review.  See id. § 3084.7.

21  The third level of review constitutes the decision of the Secretary of the California Department of

22  Corrections and Rehabilitation and exhausts a prisoner's administrative remedies.  See id. §

23  3084.7(d)(3).  A California prisoner is required to submit an inmate appeal at the appropriate

24  level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d

25  1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

26  /////

1    The PLRA exhaustion requirement is not jurisdictional but rather creates an

2 affirmative defense.  See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or

3 demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th

4 Cir. 2003).  The defendants bear the burden of raising and proving the absence of exhaustion.

5 Wyatt, 315 F.3d at 1119.  That burden, however, is "very low."  Albino v. Baca, 697 F.3d 1023,

6 1031 (9th Cir. 2012).  The defendants need only show the existence of an inmate grievance

7 procedure that plaintiff did not use.  Id. (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5

8 (9th Cir. 1996) and Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)).

9    A prisoner may be excused from complying with the PLRA's exhaustion

10 requirement if he establishes that the existing administrative remedies were effectively made

11 unavailable to him.  Albino, 697 F.3d at 1031.  For example, where prison officials improperly

12 screen out inmate grievances, they render administrative remedies effectively unavailable to the

13 prisoner.  See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  In such a case, "the inmate

14 cannot pursue the necessary sequence of appeals . . . ."  Id.  See also Nunez v. Duncan, 591 F.3d

15 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was precluded

16 from exhausting administrative remedies by a warden's mistaken instruction to him that a

17 particular unavailable document was needed for him to pursue his inmate appeal).

18    If the district court concludes that the prisoner has not exhausted administrative

19 remedies and is not excused from doing so, "the proper remedy is dismissal of the claim without

20 prejudice."  Wyatt, 315 F.3d at 1120.  See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir.

21 2005).  On the other hand, "if a complaint contains both good and bad claims, the court proceeds

22 with the good and leaves the bad."  Jones, 549 U.S. at 221.

23    In this case, the court finds that plaintiff exhausted his claims against defendants

24 McDonald, Miranda, and Bevan in connection with their alleged failure to provide him with an

25 adequately-working wheelchair.  Defense counsel acknowledges that plaintiff filed two inmate

26 appeals related to his broken wheelchair.  In Appeal Log No. HDSP-B-09-00765, plaintiff asked

1  to have his wheelchair back after staff had taken it from him for repair.  In Appeal Log No.

2  HDSP-09-01424, plaintiff complained that his wheelchair was still broken even after staff had

3  taken it for repair.  In the pending motion to dismiss defense counsel contends that these appeals

4  were inadequate to exhaust plaintiff's claims against the defendants because neither inmate

5  appeal alleged that the named defendants engaged in inappropriate activity.  (Defs.' Mot. to

6  Dismiss at 5-6 & Cornelison Decl. Exs. A & B.)

7          However, to satisfy the exhaustion requirement, a prisoner is not required to name

8  the individuals in his inmate appeal that he later decides to name in his lawsuit.  Jones, 549 U.S.

9  at 219 ("exhaustion is not per se inadequate simply because an individual later sued was not

10  named in the grievances.").  Nor is a prisoner required to allege every fact necessary to state or

11  prove a legal claim in his administrative appeal.  See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th

12  Cir. 2009).  Rather, the primary purpose of an administrative appeal is merely "to notify the

13  prison of a problem."  Id. at 1120.  Here, plaintiff's inmate appeals gave prison officials a fair

14  opportunity to respond to his claims regarding his wheelchair.  Id. at 1121 (a prisoner must

15  "provide enough information . . . to allow prison officials to take appropriate responsive

16  measures.").  Plaintiff pursued both of his inmate appeals through the highest level of review.

17  (Defs.' Mot. to Dismiss, Cornelison Decl. Exs. A & B.)  As such, the court finds plaintiff has

18  satisfied the exhaustion requirement with respect to his claims against defendants McDonald,

19  Miranda, and Bevan.

20          As noted above, the defendants bear the burden of raising and proving the

21  affirmative defense of failure to exhaust administrative remedies.  See Jones, 549 U.S. 216;

22  Wyatt, 315 F.3d at 1117-19.  Defendants McDonald, Miranda, and Bevan have not carried that

23  burden in this instance.  Accordingly, the pending motion to dismiss based on plaintiff's alleged

24  failure to exhaust his administrative remedies prior to filing suit should be denied.

25  /////

26  /////

II.  Motion to Dismiss Pursuant to Rule 12(b)

       The court now turns to defense counsel's contention that plaintiff's complaint fails to state a cognizable claim.  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

       In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

       In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

1       A.  <u>Official Capacity Claims</u>

2               Defense counsel argues that any defendants sued in their official capacities under

3       § 1983 are immune from suit under the Eleventh Amendment, and any such claims should be

4       dismissed.  (Defs.' Mot. to Dismiss at 7-8.)  The court agrees.  The state has not waived

5       immunity under the Eleventh Amendment for claims brought against it under § 1983 in federal

6       court.  <u>See</u> <u>Dittman v. California</u>, 191 F.3d 1020, 1025-56 (9th Cir. 1999) ("[T]he Supreme Court

7       has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity.").

8       Accordingly, plaintiff's claims against the named defendants in their official capacity (as

9       opposed to their individual capacity) brought pursuant to § 1983 should be dismissed.

10      B.  <u>Plaintiff's Claims for Injunctive Relief</u>

11              Defense counsel argues that plaintiff's requests for injunctive relief are now moot

12      because he is no longer housed at HDSP.  (Defs.' Mot. to Dismiss at 8.)  Once again, the court

13      agrees.  On October 12, 2012, plaintiff filed a notice of change of address in this action

14      informing the court that he is now incarcerated at California Institution for Men ("CIM").  Thus,

15      plaintiff is no longer subject to the alleged conditions he complained of at HDSP.  <u>See</u> <u>Weinstein</u>

16      <u>v. Bradford</u>, 423 U.S. 147, 149 (1975); <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

17      Moreover, contrary to plaintiff's argument in opposition to the pending motion to dismiss, his

18      claims do not fall within the "capable of repetition, yet evading review" exception to the

19      mootness doctrine.  "A mere speculative possibility of repetition is not is not sufficient.  There

20      must be a cognizable danger, a reasonable expectation, of recurrence for the repetition branch of

21      the mootness exception to be satisfied."  <u>Williams v. Alioto</u>, 549 F.2d 136, 143 (9th Cir. 1977).

22      Accordingly, plaintiff's requests for injunctive relief should be dismissed as moot.

23      C.  <u>Plaintiff's Claims against Defendant Dr. Swingle</u>

24              Defense counsel argues that defendant Dr. Swingle cannot be held liable in her

25      individual capacity because vicarious liability does not apply in § 1983 lawsuits.  (Defs.' Mot. to

26      Dismiss at 9.)  Counsel is correct that supervisory personnel are generally not liable under § 1983

1  for the actions of their employees under a theory of <u>respondeat</u> <u>superior</u>.  <u>See</u> <u>Redman v. County</u>

2  <u>of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991); <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir.

3  1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  However, in his complaint

4  plaintiff has not merely alleged that defendant Dr. Swingle is liable as a supervisor of defendants

5  Clark, Reynolds, and Moore.  Rather, plaintiff alleges in his complaint that defendant Dr.

6  Swingle maintained a policy at HDSP whereby medical staff re-packaged medication in un-

7  marked envelopes and then distributed the medication to inmates hours later without any

8  assurance that each inmate was receiving the proper medication.  (Am. Compl. at 7-8.)  Plaintiff

9  alleges that, as a result of this policy, he has not received his medications because defendants

10 were unable to re-package them on time, and he has also been hospitalized because he has

11 received the wrong medication.  (<u>Id.</u>)  In this regard, plaintiff has alleged a sufficient casual

12 connection between defendant Dr. Swingle and his claimed constitutional violations and, if

13 plaintiff proves these allegations to be true, he has a reasonable opportunity to prevail on the

14 merits of this action.  <u>See Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (a supervisory

15 defendant may be held liable "'if there exists either (1) his or her personal involvement in the

16 constitutional deprivation, or (2) a sufficient causal connection between the supervisor's

17 wrongful conduct and the constitutional violation.'"); <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th

18 Cir. 1989) ("Supervisory liability exists even without overt personal participation in the offense

19 act if supervisor officials implement a policy so deficient that the policy 'itself is a repudiation of

20 constitutional rights' and is 'the moving force of the constitutional violation.'").

21          Plaintiff also alleges that when he has gone to the law library or medical

22 appointments and asked to receive his medication at a different time defendants have refused.

23 Plaintiff complained about this practice through the inmate appeals process because it forced him

24 to choose between receiving his medication and facing disciplinary action for ignoring a ducat,

25 but defendant Swingle denied him relief or other accommodations.  (Am. Compl. at 7.)  Again, if

26 plaintiff proves these allegations to be true, he has a reasonable opportunity to prevail on the

1   merits of this action.  See Starr, 652 F.3d 1208,  (9th Cir. 2011) ("A supervisor can be liable in

2   his individual capacity for his own culpable action or inaction in the training, supervision, or

3   control of his subordinates; for his acquiescence in the constitutional deprivation, or for conduct

4   that showed reckless or callous indifference to the rights of others.") (quoting Watkins v. City of

5   Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)); see also Uriarte v. Schwarzenegger, No.

6   06cv1558-MMA (WMC), 2011 WL 4945232 at *6 (S.D. Cal. Oct. 18, 2011) ("[A] plaintiff may

7   establish liability on the part of defendants involved in the administrative grievance process

8   under the Eighth Amendment by alleging that his appeal put the defendants on notice that he had

9   a serious medical need that was not being met, and that their denial therefore constituted

10  deliberate indifference."); Kunkel v. Dill, No. 1:09-cv-00686-LJO-SKO PC, 2010 WL 3718942

11  at *1 (E.D. Cal. Sept. 15, 2010) ("Plaintiff, here, has alleged sufficient facts that plausibly

12  support the conclusion that Defendant Pfeiffer, despite having no medical training, was aware

13  that the denial of Plaintiff's administrative appeal requesting medical treatment exposed Plaintiff

14  to an excessive risk of harm."); Herrera v. Hall, No. 1:08-cv-01882-LJO-SKO PC, 2010 WL

15  2791586 at *4 (E.D. Cal. July 14, 2010) ("[I]f there is an ongoing constitutional violation and the

16  appeals coordinator had the authority and opportunity to prevent the ongoing violation, a plaintiff

17  may be able to establish liability by alleging that the appeals coordinator knew about an

18  impending violation and failed to prevent it.").

19          On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately

20  prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it

21  may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not

22  the test.  See Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In this case, the court finds

23  that plaintiff's factual allegations "plausibly suggest an entitlement to relief."  Ashcroft v. Iqbal,

24  556 U.S. 662, 681 (2009).  Accordingly, defendants' motion to dismiss plaintiff's claims against

25  defendant Dr. Swingle as based on a vicarious liability theory should be denied.

26  /////

1    III.   Qualified Immunity

2            Next, the court turns to defense counsel's contention that defendants Dr. Swingle

3    and Clark as well as defendants McDonald, Miranda, and Bevan are entitled to dismissal on

4    qualified immunity grounds.  Government officials enjoy qualified immunity from civil damages

5    unless their conduct violates clearly established statutory or constitutional rights.  Jeffers v.

6    Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

7    (1982)).  When a court is presented with a qualified immunity defense, the central questions for

8    the court are:  (1) whether the facts alleged, taken in the light most favorable to the plaintiff,

9    demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2)

10   whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

11           The United States Supreme Court has held that "while the sequence set forth there

12   is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555

13   U.S. 223, 236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make

14   out a statutory or constitutional violation, "there is no necessity for further inquiries concerning

15   qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at

16   issue was not clearly established at the time of the defendant's alleged misconduct, the court may

17   end further inquiries concerning qualified immunity there without determining whether the

18   allegations in fact make out a statutory or constitutional violation.  See Pearson, 555 U.S. 236-

19   242.

20           "A government official's conduct violate[s] clearly established law when, at the

21   time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

22   'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft

23   v. al-Kidd, ___U.S.___, ___,131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483

24   U.S. 635 (1987)).  In this regard, "existing precedent must have placed the statutory or

25   constitutional question beyond debate."  Id.  See also Clement v. Gomez, 298 F.3d 898, 906 (9th

26   Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time]

11

1    gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting <u>Saucier</u>,

2    533 U.S. at 202).  The inquiry must be undertaken in light of the specific context of the particular

3    case.  <u>Saucier</u>, 533 U.S. at 201.  Because qualified immunity is an affirmative defense, the burden

4    of proof initially lies with the official asserting the defense.  <u>Harlow</u>, 457 U.S. at 812.

5              As to defendant Dr. Swingle, defense counsel argues she is entitled to qualified

6    immunity because her alleged policy of re-packaging medication in unmarked containers does

7    not amount to the "unnecessary wanton infliction of pain" as required by the Eighth Amendment.

8    (Defs.' Mot. to Dismiss at 11-12.)  The court finds this argument unpersuasive.  Here, plaintiff

9    alleges that defendant Dr. Swingle maintained a policy whereby medical staff re-packaged

10   medication in un-marked envelopes and then distributed the medication to inmates hours later

11   without any assurance that each inmate was receiving the proper medication.  (Am. Compl. at 7-

12   8.)  As a result of the policy, plaintiff allegedly failed to receive his medication at times and on

13   one occasion received the wrong medication resulting in his hospitalization.  (<u>Id.</u>)  Viewing

14   plaintiff's allegations in the light most favorable to the him, defendant Dr. Swingle's conduct

15   violated plaintiff's constitutional rights.  It is well established that deliberate indifference may be

16   shown when prison officials deny, delay, or intentionally interfere with medical treatment, or

17   may be shown by the way in which prison officials provide medical care.  <u>See</u> <u>Snow v.</u>

18   <u>McDaniel</u>, 681 F.3d 978, 986 (9th Cir. 2012); <u>see</u> <u>also</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 (9th

19   Cir. 2000) (en banc) ("A prisoner need not prove that he was completely denied medical care.");

20   <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989) ("[A]ccess to medical staff is

21   meaningless unless that staff is competent and can render competent care.").  Accordingly,

22   defendants' motion to dismiss defendant Dr. Swingle based on the affirmative defense of

23   qualified immunity should be denied.

24             As to defendant Clark, defense counsel argues that defendant Clark is entitled to

25   qualified immunity because she failed to provide plaintiff his medication on various occasions,

26   but the specific instances described by plaintiff show she was acting reasonably and in

accordance with prison policy.  (Defs.' Mot. to Dismiss at 12.)  Again, the court finds this

argument unpersuasive.  In his amended complaint, plaintiff alleges inter alia that defendant

Clark denied him his prescribed medication on more than fifty occasions.  (Am. Compl. at 5-6.)

Viewing plaintiff's allegations in the light most favorable to the him, defendant Clark's conduct

violated plaintiff's constitutional rights.  Specifically, deliberate indifference may be shown

when prison officials ignore express orders from treating physicians.  See Estelle, 429 U.S. at

104-05 (deliberate indifference may manifest "by prison doctors in their response to the

prisoner's needs or by prison guards in intentionally denying or delaying access to medical care

or intentionally interfering with the treatment once prescribed"); Lopez v. Smith, 203 F.3d 1122,

1132 (9th Cir. 2000) (a prisoner may establish deliberate indifference by showing that a prison

official intentionally interfered with his medical treatment); Wakefield v. Thompson, 177 F.3d

1160, 1165 & n.6 (9th Cir. 1999) ("a prison official acts with deliberate indifference when he

ignores the instructions of the prisoner's treating physician or surgeon.").  Accordingly,

defendants' motion to dismiss defendant Clark based on the affirmative defense of qualified

immunity should be denied.

As to defendants McDonald, Miranda, and Bevan, defense counsel argues that

they are entitled to qualified immunity because while plaintiff alleges that his wheelchair was

broken for an extended period of time and that the defendants lied about the status of wheelchair,

plaintiff has failed to specify how the defendants lied or how the lies caused a delay in the

repairing of his wheelchair.  (Defs.' Mot. to Dismiss at 13.)  Once more, the court disagrees.  In

his amended complaint, plaintiff alleges that he tried to get his wheelchair repaired but prison

officials did not provide him relief through the administrative grievance process.  (Am. Compl. at

8.)  Then, when he filed a petition for writ of habeas corpus in state court, the court in that case

ordered an evidentiary hearing at which time defendants conceded that plaintiff's wheelchair was

unsafe to operate and that a replacement was necessary.  (Id.)  Viewing plaintiff's allegations in

the light most favorable to the him, defendants McDonald, Miranda, and Bevan's alleged

conduct, if proven, violated plaintiff's constitutional rights.  Repair of a wheelchair is a serious

medical need.  See McGuckin, 974 F.2d at 1059 (a medical need is serious if left untreated could

result in "further significant injury" and the "unnecessary and wanton infliction of pain.").

Moreover, according to plaintiff's allegations, defendants lied about the status of his wheelchair

to avoid getting it repaired.  (Am. Compl. at 8.)  If true, defendants responded to plaintiff's

serious medical needs with deliberate indifference.  See Farmer v. Brennan, 511 U.S. 825, 834 &

837 (1994); Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brown v. Castillo, No. 1:02-cv-

06018-LJO-DLB PC, 2007 WL 3054165 at *15 (E.D. Cal. Oct. 19, 2007) (denying qualified

immunity because "[n]o reasonable officer would believe that allowing a wheelchair-bound

inmate to ride in a wheelchair in need of repair could not have resulted in a substantial risk to

inmate health and safety.").  Accordingly, defendants' motion to dismiss defendants McDonald,

Miranda, and Bevan based on the affirmative defense of qualified immunity should be denied.

The court notes that defense counsel does not address the "clearly established"

prong of the qualified immunity analysis in the pending motion.  However, the court observes

that by 2008, the time of the alleged constitutional violations in this case, "the general law

regarding the medical treatment of prisoners was clearly established," and "it was also clearly

established that [prison staff] could not intentionally deny or delay access to medical care."

Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002).  Defendants should have known that

failing to provide plaintiff with his prescribed medication and an adequately-working wheelchair

violated his rights under the Eighth Amendment.

IV.  Armstrong Class Action

Finally, defense counsel argues that plaintiff's requests for injunctive relief under

the ADA are encompassed by and barred as a result of the consent decree and permanent

injunction entered in Armstrong v. Brown, which applies to all present and future state prisoners

and parolees with mobility, sight, hearing, learning, and kidney disabilities.  (Defs.' Mot. to

Dismiss at 13.)  Insofar as plaintiff's claims for injunctive relief are not moot, the court agrees.

1    Where a plaintiff is a member of a pending class action for equitable relief concerning prison

2    conditions, he may not maintain a separate, individual suit for relief that is also sought by the

3    class.  See Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979); see also Diaz v. Diaz, No.

4    1:12-cv-01296-GBC (PC), 2012 WL 5949094 at *6 (E.D. Cal. Nov. 28, 2012) (plaintiff's ADA

5    claims for injunctive relief should be dismissed based on plaintiff's membership in Armstrong

6    class); Webb v. Schwarzenegger, No. C 07-2294 PJH, 2012 WL 163012 at *2 (N.D. Cal. Jan. 19,

7    2012) (same).  Here, plaintiff seeks injunctive relief to prevent CDCR and its employees from

8    "discriminating against the disabled."  (Am. Comp. at 5.)  There is no indication that the general

9    injunctive relief sought is "not covered" by the class action in Armstrong v. Brown.  Crawford,

10   599 F.2d at 891.  Accordingly, plaintiff's  requests for injunctive relief under the ADA should be

11   dismissed.[2]

12                                    **OTHER MATTERS**

13          Also pending before the court is plaintiff's motion for preliminary injunctive

14   relief.  Therein, plaintiff complains about his conditions of confinement at CIM and asks the

15   court to order Acting Warden Cash to provide him with an electricity-equipped cell.  Defendants

16   have opposed the motion, and plaintiff has filed a reply.

17          The court will recommend that plaintiff's motion for preliminary injunctive relief

18   be denied.  First, plaintiff's motion does not comply with Local Rule 231 which requires that a

19   motion for preliminary injunctive relief be accompanied by:  (1) a declaration signed under

20   penalty of perjury on the question of irreparable injury; (2) a memorandum of points and

21   authorities addressing all legal issues raised by the motion; and (3) evidence of notice to all

22

23          [2]  However, the court notes that plaintiff's ADA claims are not wholly barred as defense
     counsel seems to suggest in defendants' pending motion to dismiss.  Individual suits for damages
     are not barred by a pending class action for injunctive relief.  See Hiser v. Franklin, 94 F.3d
24   1287, 1291 (9th Cir. 1996) ("the general rule is that a class action suit seeking only declaratory
     and injunctive relief does not bar subsequent individual damage claims by class members, even if
25   based on the same events.").  If plaintiff can prove intentional discrimination by the defendants,
     he may be able to recover monetary damages under Title II of the ADA.  See Duvall v. County of
26   Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

                                            15

1  persons who would be affected by the order sought.  In addition, in plaintiff's motion for

2  preliminary injunctive relief, he seeks an order against Acting Warden Cash.  Plaintiff is advised

3  that this court is unable to issue an order against any individual or entity who is not a party to a

4  suit pending before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112

5  (1969); Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985) ("A

6  federal court may issue an injunction if it has personal jurisdiction over the parties and subject

7  matter jurisdiction over the claim; it may not attempt to determine the rights of persons not

8  before the court.").  Finally, "[t]he proper legal standard for preliminary injunctive relief requires

9  a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer

10  irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

11  and that an injunction is in the public interest.'"  Stormans v. Selecky, 571 F.3d 960, 978 (9th

12  Cir. 2009) (quoting Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008)).  Here, plaintiff

13  complains about various conditions of confinement at CIM and claims that the totality of the

14  circumstances of his confinement has resulted in a denial of access to the courts.  Plaintiff is

15  advised that, to state a cognizable claim for denial of access to the courts, he must demonstrate

16  an "actual injury."  Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Sands v. Lewis, 886 F.2d

17  1166, 1171 (9th Cir. 1989).  Plaintiff has not alleged an actual injury or shown that any of the

18  conditions he complains of have resulted in an inability to prosecute this action or any other

19  action.  In this regard, plaintiff's allegations fall short of making the showing required for the

20  granting of preliminary injunctive relief.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.

21  1982).

22            Plaintiff has also filed a motion for an automatic extension of time to respond to

23  all court matters.  In his motion, plaintiff alleges that he has experienced delays in receiving his

24  legal mail from the court and from the Office of the Attorney General.  The court will deny

25  plaintiff's motion as unnecessary.  If plaintiff believes he needs additional time to respond to

26  /////

1  future court orders or motions and filings by the defendants counsel he may request an extension

2  of time from the court at that time.

3                                              **CONCLUSION**

4                    IT IS HEREBY ORDERED that plaintiff's motion for an automatic extension of

5  time (Doc. No. 51) is denied;

6                    IT IS HEREBY RECOMMENDED that:

7                    1.  Defendants' motion to dismiss for failure to exhaust administrative remedies

8  (Doc. No. 35) be denied;

9                    2.  Defendants' motion to dismiss for failure to state a claim (Doc. No. 35) be

10  granted in part and denied in part as follows:

11                               a.  Defendants' motion to dismiss plaintiff's claims brought pursuant to

12                                   § 1983 against defendants in their official capacity be granted;

13                               b.  Defendants' motion to dismiss plaintiff's requests for injunctive relief

14                                   as moot be granted; and

15                               c.  Defendants' motion to dismiss plaintiff's claims against defendant Dr.

16                                   Swingle as based on a vicarious liability theory be denied;

17                    3.  Defendants' motion to dismiss based on the affirmative defense of qualified

18  immunity (Doc. No. 35) be denied;

19                    4.  Defendants' motion to dismiss plaintiff's requests for injunctive relief under

20  the ADA (Doc. No. 35) be granted;

21                    5.  Plaintiff's motion for preliminary injunctive relief (Doc. No. 43) be denied;

22  and

23                    6.  Defendants be directed to file an answer in response to plaintiff's Eighth

24  Amendment and ADA claims within thirty days of any order adopting these findings and

25  recommendations.

26  /////

1    These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3   days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within seven days after service of the objections.  The parties are

7   advised that failure to file objections within the specified time may waive the right to appeal the

8   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   DATED: June 26, 2013.

11   _____

    DALE A. DROZD
12   UNITED STATES MAGISTRATE JUDGE

DAD:9
13   robe0474.57

18